IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| RICHARD J. FORD,<br>and<br>FEDSYS, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>JERRY W. TORRES,<br>and<br>TORRES ADVANCED ENTERPRISE<br>SOLUTIONS, LLC<br><br>    Defendants. | Case No. 1:08CV1153-JCC/JFA |

### PLAINTIFF RICK FORD AND FEDSYS, INC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs Rick Ford and FedSys, Inc. (collectively "Plaintiff"), by and through counsel, in opposition to Defendants' Jerry W. Torres and Advanced Enterprise Solutions, LLC (collectively "Defendant"), Motion to Dismiss, state as follows:

### PRELIMINARY STATEMENT

Defendant seeks to reduce Plaintiff's Complaint to a breach of contract case. This effort, however, is inconsistent with the facts specifically alleged in the Complaint. While Plaintiff seeks damages for breach of contract (Compl. ¶¶ 75-86), Plaintiff alleges Defendant caused the greater mischief after the contractual breach, when Defendant engaged in a systematic effort to damage Plaintiff's business by sullying his name, interfering with his contractual relations, and hijacking his highly lucrative list of linguist candidates.

Plaintiff alleges that, after the relationship soured and performance under the contracts had ceased, Defendant Torres set out to damage Plaintiff's business by torpedoing a nearly-completed business deal between Plaintiff and SOSi International Ltd. (Compl. ¶¶ 97-121). This campaign was successful, (Compl. ¶ 121), and Plaintiff claims to have suffered approximately $552,923.21 in damages. *Id.*

Plaintiff further alleges that Defendant—also after contractual breach—commandeered its statutorily protected information, (*see e.g.*, Compl. ¶ 144), converted it for Defendant's own gain, (*see e.g.* Compl. ¶ 149), and thereafter promulgated the information internationally. (Compl. ¶ 148). In particular, the Complaint alleges Defendant improperly came into possession of some 14,000 names of potential United States government linguist resources—both those submitted by Plaintiff and those submitted by others—and delivered them to a Canadian telemarketing firm for the Defendant's own pecuniary exploitation. (Compl. ¶ 148).

Finally, and also after Defendant's contractual breach, Plaintiff alleges that Defendant sought to undermine the very foundation of Plaintiff's ability to continue to serve as a contractor in the United Stated defense industry: his security clearance. (*See generally*, Compl. ¶¶ 150-169). The production in discovery of Defendant's defamatory accusations against Plaintiff and directed to the United States government Defense Security Service, threatened irreparable injury to Plaintiff and required the nonsuit of Plaintiff's state court action.

## ARGUMENT

I. **LEGAL STANDARD**

A Motion to Dismiss under Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir. 1972).

## II. THE FACT THAT PLAINTIFF HAS ALLEGED TWO BREACH OF CONTRACT COUNTS DOES NOT DEFEAT THEIR QUANTUM MERUIT CLAIM.

Defendant argues that Plaintiff's Count Three fails because *quantum meruit* is not permitted where there is a contract governing the rights and obligations of the parties. Defendant cites *Centex Construction v. Acstar Insurance Company* for this proposition. In *Centex Construction*, the defendants to a contract action on a subcontract sought the court's leave to file an amended answer and counterclaim. 448 F. Supp. 2d 697, 707 (E.D. Va. 2006). They argued that because the plaintiffs had reassigned the defendants contractual duties to a third party, the defendants were entitled to claim the value of work performed on a theory of *quantum meruit*. *Id.* This court disagreed, finding that the defendant remained in a contractual relationship with the plaintiff "at all relevant times," and thus, could recover only in contract. *Id.* at 708.

Defendants ask this court to dismiss Plaintiffs' quantum meruit claim on the grounds that the parties "remained in a contractual relationship at all relevant times." (Memo. p. 8). Defendants' assertion misstates the parties' contractual relationship and disregards the clear assertions in Plaintiffs' complaint. Plaintiffs' complaint clearly alleges that in response to Torres' breach of the 2006 Agreement by failing to pay amounts due under that agreement,

3

FedSys terminated the agreement during the third week of December 2007. (Complaint ¶¶58,72).

After the termination of the 2006 Agreement, the parties no longer had a contractual relationship. Defendants make much of the fact that likely no work was performed by the Plaintiff after the termination of the contract. (Memo. p. 8). Defendant, however, continued to benefit from the candidates Plaintiff recruited prior to the termination of the agreement.[1] (See Compl. ¶¶ 91-92). In its quantum meruit count, Plaintiffs seek compensation for their recruitment efforts for the candidates hired by Defendants after the 2006 Agreement was terminated. (See Compl. ¶ 88).

Defendants attach great import to Plaintiffs calculation of quantum meruit damages based upon the terms of the 2006 Agreement. Under a theory of quantum meruit, the measure of recovery is the reasonable value of the work and labor performed, less the amount of compensation already received for the services. *Hendrickson v. Meredith*, 161 Va. 193, 198, 170 S.E. 602, 604 (1933); *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983). Plaintiffs suggest that in absence of a contract between the parties, the reasonable value of Plaintiffs services in recruiting candidates who were hired by Defendants may be determined by the price Defendants had originally agreed to be "reasonable" at the time they entered into the 2006 Agreement.

### III. PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE SUFFICIENTLY ALLEGES "IMPROPER MEANS" AND LOSS OF BUSINESS EXPECTANCY

---

[1] Contrary to Defendants' assertions in their Motion to Dismiss, Plaintiffs do specifically name six candidates hired by TAES after the termination of the agreement. (Compl. ¶¶ 91-92). Plaintiffs seek to recover compensation for these, and any other post-termination hires named in discovery.

Defendants argue that Plaintiffs have failed to state a claim for tortious interference with contractual expectancy because (1) they eventually received the contract and (2) they have failed to properly plead the element of wrongful means.

### A. VIRGINIA LAW HAS NO REQUIREMENT THAT THE INTERFERENCE CAUSE A PERMANENT DEPRIVATION OF THE CONTRACTUAL RELATIONSHIP

Defendants contend that because FedSys eventually received the contract, it cannot claim that defendants "induced or caused a breach or termination of the expectancy." *See Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985). There is no requirement, however, that the breach be a permanent cancellation of the contract, and Plaintiffs submit that they may still suffer injury as a result of Defendants' partially successful efforts to interfere with their contractual expectancy. *See Commerce Funding Corp. v. Worldwide Securities*, 249 F.3d 204, 213-14 (4th Cir. 2001) (noting the difference under Virginia law between tortious interference with prospective economic advantage and tortious interference with contractual relations was the requirement of improper means, not the permanence of the deprivation when the former has no requirement of a permanent severance of the business relationship). Plaintiffs plead and can prove that due to the delay in receiving the SOSi contract caused by the Defendants' interference, they suffered a significant amount of lost profits, which are claimable under a this theory of recovery. (Compl. ¶ 121). *See, e.g., Lockheed Information Management Sys. Co. v. Maximus, Inc.*, 259 Va. 92, 108, 524 S.E.2d 420, 429 (2000) (damages of lost profits available in action for torious interference with contractual relations).

### B. PLAINTIFFS HAVE SUFFICIENTLY PLED WRONGFUL MEANS THROUGH DEFAMATION AND HARD DEALING

With regard to wrongful means, plaintiffs have alleged both defamation and hard dealing by the defendants in an attempt to interfere with the award of the SOSi contract.

5

1.  **PLAINTIFF HAS RECOUNTED DEFENDANTS' DEFAMATORY STATEMENTS WITH SUFFICIENT SPECIFICITY**

Defendants make two arguments that defamation, as pled, cannot serve as a basis for the wrongful means element because the facts as Plaintiff alleges them do not state a claim for defamation. First, Defendants contend that because Plaintiff has not quoted Defendant directly, the accusations in the complaint cannot sufficiently plead defamation. Defendant cites *Gibson v. Boy Scouts of America*, 360 F. Supp. 2d 776, 782 (E.D. Va. 2005) and *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215, 3 S.E. 2d 405, 410 (1939) for the proposition that a claim for defamation must specify the exact words spoken. *Federal Land Bank* has been repeatedly cited in Virginia and the federal courts of this Circuit for this proposition. Under the rule of that case,

> the exact words charged to have been used by defendant [are] necessary to correctly state a good cause of action for libel, slander or insulting words. Good pleading requires that the exact words spoken or written must be set out in the declaration in *haec verba*. Indeed, the pleading must go further, - that is, it must purport to give the exact words.

*Id*. The United States Court of Appeals for the Fourth Circuit, however, has held that this requirement set out by the Supreme Court of Virginia in defamation cases does not alter the pleading requirement for that cause of action.

> A defamation complaint, like any other civil complaint in federal court, must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them. See Fed.R.Civ.P. 9(b). Thus, the usual standards of notice pleading apply in defamation cases . . . .

*Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005).

Though the term employed in the *Federal Land Bank* decision is *haec verba* or "verbatim," see Blacks Law Dictionary 7th ed. p. 786 (1999), the requirement of "exact words"

6

has most often been applied to bar claims where the allegedly defamatory words were only generally and broadly indicated. *See, e.g., Broadnax v. Department of Veteran Affairs Washington Mut. Bank*, No. Civ.A. 2:04CV693, 2005 WL 1185809, *8 (E.D. Va. May 19, 2005) (plaintiff's allegation that "defamatory communications were maintained in Defendant's loan file and disseminated to credit agencies" insufficient to state a claim); *Elamon v. Red Robin Intern., Inc.*, No. 2:06cv202, 2006 WL 2850644, *1-2, 4 (E.D. Va. Sept. 29, 2006) (plaintiff's allegation of "general damage to his reputation" based upon the situation which gave rise to his malicious prosecution claim did not state a cause of action for defamation as he failed to "specifically identify any statements . . . that were allegedly libelous").

Plaintiff's Complaint in this case does sufficiently state allegations of defamatory words. Specifically, Plaintiffs have alleged Defendant told third parties with significant decision making power and influence in the defense contracting industry that Rick Ford and FedSys consistently "over-billed and double and triple billed Torres AES for candidates previously hired"; that Rick Ford was "not trustworthy"; that Rick Ford had "cheated" Jerry Torres; and that Rick Ford refused to pay on a debt he owed to Jerry Torres. Complaint ¶¶62-65. Plaintiff has set out specific statements made by Defendants which "imput[ed] to [plaintiffs] a criminal offense of moral turpitude for which [they] may be indicted and punished, an unfitness or lack of integrity required to perform official or professional duties, and words which prejudice such person in his or her profession or trade." *Wells v. Liddy*, 186 F.3d 505, 522 (4th Cir.1999) (internal quotations omitted).

Through an accident of drafting, Plaintiff did not employ quotation marks in recounting defendants' defamatory statements. Plaintiffs do mean to import that defendants did make the statements as alleged. Plaintiffs maintain that whether they have alleged statements which

7

purport to be those made by the defendants should not depend upon the employment of punctuation marks. Indeed, the United States Court of Appeals has observed in a different context that the use of quotation marks is not necessarily indicative of an exact quote. *See U.S. v. Truong Dinh Hung*, 629 F.2d 908, 922 (4th Cir. 1980) (use of context to determine whether "quotation marks enclosed . . . exact words or whether the quotation marks were used . . . as literary devices").

2. **DEFENDANT'S PHONE MESSAGE LEFT WITH MR. SCHROEDER IS, IN ISOLATION, DEFAMATION PER QUOD, AS IT REFERS TO DEFENDANT'S EARLIER DEFAMATORY ALLEGATIONS**

Next, Defendants allege that the statement in the phone message from Mr. Torres to Mr. Schroeder of SOSi is not defamatory. Defendants' argument on this point is dependent on defendants' previous argument that because of a failure to use quotation marks, no other allegations of defamation are sufficiently stated. Plaintiffs' theory, however, as clearly stated in the complaint is that the message left for Mr. Schroeder by Mr. Torres was intended by Torres to refer to his earlier defamatory statements about Mr. Ford and FedSys made to other SOSi executives. The technical classification of the phone message, therefore, would be defamation per quod, that is, the "the defamatory meaning of [the phone message] arise[s] by innuendo from the published words in combination with known extrinsic facts." Wilder v. Johnson Publishing Co., Inc., 551 F.Supp. 622, 623 (E.D. Va. 1982). Finally, Defendants contend that "Plaintiffs have failed to allege any falsity" with regard to the phone message. The phone message, however, refers to and incorporates the earlier defamatory statements (Compl. ¶97), and Plaintiff has clearly stated those statements were "lies." (Compl. ¶62).

Additionally, in a footnote, Defendants contend that any communications between them and SOSi executives were privileged, and therefore, Plaintiffs' assertion of the improper methods

8

element based upon defamation is barred. Specifically, citing *Great Coastal Express, Inc. v. Ellington*, 230 Va. 142, 153, 334 S.E.2d 846, 853 (1985), Defendants claim that because they had "an interest or owe[d] a duty, legal, moral or social" to SOSi and because SOSi had "a corresponding interest or duty," communications about Plaintiffs between those two entities were privileged. *Great Coastal*, however, and the other Virginia cases which specifically speak to the application of a qualified privilege to bar a defamation claim are clear that an assertion of privilege may be defeated by a showing of "common law malice," that is, "the speaker uttered defamatory words without believing them to be true, or lacked reasonable or probable grounds for believing them to be true." *Id* at 155, 334 S.E.2d at 854. *See also, The Gazette v. Harris*, 229 Va. 1, 18, 325 S.E.2d 713, 727 (1985); *Taylor v. Grace*, 166 Va. 138, 144, 184 S.E. 211, 213 (1936). Plaintiffs have made this specific allegation of common law malice in their complaint. (Compl. ¶102).

3. **THE FACTS IN PLAINTIFF'S COMPLETE SUFFICIENTLY ALLEGE THE IMPROPER METHOD OF HARD DEALING**

Next Defendants attack Plaintiff's second basis for the improper method element of tortious interference with a contract: hard dealing. Defendants contend that Torres' conduct alleged in Plaintiff's complaint does not constitute hard dealing: "An email that merely contained true information that Torres AES had terminated Plaintiffs' services and that Plaintiffs had a non-compete does not reach the level of anti-competitive or unfair conduct that tortious interference is meant to protect." (Memo. p. 12). Defendant over-simplifies and misstates Plaintiffs' accusation.

Plaintiffs clearly state that the import of Torres' email was in its intended and perceived threat to SOSi with regard to its pending business with Torres (Compl. ¶¶ 114-117). As support for their allegation that Torres intended his email message to SOSi as a threat, Plaintiffs cite the

fact that no non-compete agreement existed between FedSys and TAES. (Compl. ¶ 112). Specifically, Plaintiffs point to their earlier agreement with TAES that Torres would work to make FedSys an independent subcontractor to SOSi, as proof of the fact that there could be no non-compete between FedSys and TAES which would prevent FedSys from working with SOSi. (Compl. ¶113). Finally, Defendants cite a clause of the 2006 Agreement for the proposition that Plaintiff's allegation that the parties had no non-compete agreement "is patently false." That clause, however, prohibits the disclosure of TAES proprietary information and says nothing about a non-compete agreement.

## IV.    COUNTS V-VII[2] ARE STATUTORY TORT CLAIMS, PERMISSIBLY PLED IN THE ALTERNATIVE TO PLAINTIFF'S QUANTUM MERUIT CLAIM

Defendants contend that Counts V-VII are barred by the doctrine that "a tort claim cannot be maintained in conjunction with a breach of contract claim." (Memo p. 13). As with their argument against Plaintiff's quantum meruit claim, Defendants claim that Plaintiffs may not bring their statutory counts because a contractual relationship existed between the parties during the relevant period. *Id.* Each of Plaintiff's statutory causes of action, however, deal with the period of time immediately following the termination of the 2006 Agreement. The statutory counts are pled as alternative counts with the quantum meruit claim and do not implicate Plaintiff's pure contract causes of action.

## V.    PLAINTIFFS HAVE ALLEGED A PROPRIETARY INTEREST IN THEIR CANDIDATE LIST INPUTTED INTO THE WLSE DATABASE SUFFICIENT TO STATE A CAUSE OF ACTION UNDER THE VIRGINIA COMPUTER CRIMES ACT AND THE COMPUTER FRAUD AND ABUSE ACT

Defendants contend that Plaintiffs have not alleged that Defendants accessed their candidate list "without authority" or "without authorization," and thus, may not bring a cause of

---

[2] Plaintiffs inadvertently numbered two sequential counts as "VI." For purposes of responding to Defendants' Motion to Dismiss, Plaintiffs will refer to the second count VI, Violation of Virginia Uniform Trade Secrets Act, as count VII, and the final, Defamation per se count as VIII.

action under the Virginia Computer Crimes Act or the Computer Fraud and Abuse Act. (Memo p. 14).

Defendants principally rely on FedSys' "acknowledge[ment]" of "TAES['] contractual right to use the WLSE database, as set out by its agreement with L-3" for the proposition that "FedSys had contractual—not proprietary—rights to information input[ted] into the WLSE database," and thus TAES' access of FedSys candidate list was not without authority or authorization. (Memo p. 15). In support of their argument, Defendants have attached an unexecuted copy of L-3's Non L-3 employees Network Access Agreement, which Defendants allege was an agreement between TAES and L-3.

First, according to Defendants, this contract existed between L-3 and TAES, and Plaintiff was not a party to the agreement. Defendants' essentially allege that Plaintiffs forfeited their proprietary right in the candidates they recruited based upon the terms of a contract to which they were not a party. Plaintiffs clearly allege in their complaint that any procedures promulgated by L-3 with which they were obligated to comply, were communicated through TAES. (Compl. ¶ 41). TAES' contract with a third party cannot operate to extinguish Plaintiff's proprietary right in its own work product.

Additionally, case law in this circuit is clear that in considering a motion to dismiss, a court may consider documents attached to the complaint and the motion to dismiss, so long as the documents are integral to the complaint and authentic. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Without signature, the requirement for authenticity is lacking here.

Finally, Defendants argue that Plaintiffs have failed to allege one of the five factors listed in 18 U.S.C. § 1030(a)(5)(B), required in properly pleading a cause of action under the Computer

Fraud and Abuse Act. One of these factors is "damage affecting a computer system used by or for a government entity in furtherance of . . . national security." 18 U.S.C. § 1030(g)(5). Plaintiffs have specifically pled this factor. (See Compl. ¶ 135).

## VI. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED FACTS THAT SHOW THEY HAVE A TRADE SECRET MISAPPROPRIATED BY DEFENDANTS

The tort of misappropriation of trade secrets is codified in the Virginia Uniform Trade Secrets Act (VUTSA), Va.Code Ann. §§ 59.1-336 to 59.1-343. The Act defines a trade secret as:

> ... information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* Acquisition through "improper means" includes acquisition through "theft, bribery, misrepresentation, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* This list is non-exhaustive. In light of this statutory language, there are two components to the plaintiff's claim: (1) the information in question must constitute a trade secret, and (2) that trade secret must have been misappropriated.

With regard to trade secret status, the information must be of a subject matter entitled to trade secret protection, must have independent economic value as a result of not being generally known and not being readily ascertainable by proper means; and reasonable efforts must have been taken to maintain its secrecy. *See MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 396 (E.D.Va. 2004). The case law is clear that just about anything can constitute a trade secret under the right set of facts. Few classes of information are per se excluded from trade secret protection and the list of information eligible for trade secret status detailed in the VUTSA is not exhaustive.

Defendant claims that "significantly undermining Plaintiffs' argument that candidate information they input on the WLSE database constituted a trade secret is that Plaintiffs cannot assert they undertook reasonable efforts to maintain secrecy, as the information they input into the WLSE database was for the purpose of placing candidates on the Titan/L-3 contract pursuant to the TAES-FedSys contract." However, simply because information is disclosed outside of a company does not result in the loss of trade secret status. "'The secrecy need not be absolute; the owner of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied.'" *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F.Supp.2d 565, 574 (E.D.Va.2004) (quoting *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 397 S.E.2d 110, 113 (1990)). Furthermore, the requirement that the information not be generally known refers to the knowledge of other members of the relevant industry — the persons who can gain economic benefit from the secret. *See* Uniform Trade Secrets Act, § 1, comment. Finally, only reasonable efforts must be taken to maintain secrecy. Restricting access to information, implementing confidentiality agreements, and providing physical barriers to access are all reasonable efforts.

In the present case, practically all of the information the plaintiff claims constitutes trade secrets is proper subject matter: customer lists, pricing information, marketing and sales techniques, information about products, etc. See James Pooley, Trade Secrets § 6.02 (2004). In other words, under the right set of circumstances, each category of information could be a trade secret. For example, a customer list, or a method of selling or marketing could be a trade secret. The question is whether the facts present in the instant case serve to elevate such information to the status of trade secrets.

Defendant continues, "Plaintiffs cannot claim an economic value to the purported proprietary list of candidates located on the WLSE database ..." In order to have economic value, a trade secret must not be readily ascertainable through legitimate means. If a competitor could easily discover the information legitimately, the inference is that the information was either essentially "public" or is of *de minimus* economic value. The Commentary to the Uniform Trade Secrets Act, upon which the VUTSA is based, provides a number of proper means by which one could learn a trade secret. Most relevant to the instant case are the examples where one observes the product on public use or display or one reviews publicly available literature. What constitutes readily ascertainable through proper means is heavily fact-dependent and simply boils down to assessing the ease with which a trade secret could have been independently discovered. However, it is also clear that a compilation of public facts can also constitute a trade secret if the compilation itself has remained confidential. *Comprehensive Technologies Intern., Inc. v. Software Artisans, Inc.*, 3 F.3d 730, 736-37 (4th Cir.1993). It logically follows that this compilation must not be reasonably ascertainable through proper means.

Finally, with regard to trade secret status, Defendant addresses the factual complexities associated with entities' respective propriety rights to candidates located on the WLSE database. Defendant's contention underscores the inappropriateness of the pending motions because, as most courts have determined, the determination whether a trade secret exists ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence. *See, e.g., Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2nd Cir. 1985); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003).

As the United States Court of Appeals has observed, the existence of a trade secret often is "not obvious" and "requires an ad hoc evaluation of all the surrounding circumstances. For

this reason, the question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder after full presentation of evidence from each side.'" *Learning Curve Toys, Inc.*, 342 F.3d at 723 (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288-89 (5th Cir. 1978)). Moreover, discussed *supra*, most courts also conclude that the issue whether a trade secret has been misappropriated generally presents a question of fact. *See Texas Urethane, Inc. v. Seacrest Marine Corp.*, 608 F.2d 136, 140 (5th Cir. 1979); *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1239 (8th Cir. 1994). Such a determination is uniquely factual in nature because it ordinarily involves extensive circumstantial evidence that must be evaluated against the direct evidence often presented by defendants in a trade secrets case. *See Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 561 (4th Cir. 1990).

Once a plaintiff has demonstrated that the information in question was a trade secret, it must then prove that it was misappropriated. The VUTSA details three acts that, under the right circumstances, can constitute misappropriation: the acquisition, disclosure, or use of a trade secret. Va.Code Ann. § 59.1-336.3. Where a trade secret was acquired or learned through "improper means," any of the three acts will constitute misappropriation. There are a wide variety of methods used to acquire information that will be considered "improper" under the VUTSA, including misrepresentation, breach of a duty or inducement of a breach of a duty to maintain secrecy, and espionage. Va.Code Ann. § 59.1-336.

In the present case, defendant improperly acquired trade secrets by misrepresenting material fact to induce plaintiff's to enter into the contract and, upon entry, breached it duty to preserve the secrecy of plaintiff's trade secret via improper disclosure to third parties. Defendant's misappropriation is similar to that of the defendant's in *American Sales Corp. v.*

*Adventure travel, Inc. et al*, 862 F.Supp.1476 (E.D.Va. 1994). In *American Corp.*, the plaintiff was a multi-level marketing company that sold discount services for membership fees and defendant was a discount service provider turned competitor. Prior to defendant's entry into the multi-level marketing business, pursuant to a contract, plaintiff provided defendant a list of the names, addresses and phone numbers of its "members" with the understanding defendant would keep the list confidential and would not use the list for its own gain. After the contractual relationship between the parties had ended, defendant entered the multi-level marketing business and plaintiff learned defendant had solicited members from it previously provided list. In the present case, defendant's misappropriation is similar because our Plaintiff entered into an agreement that concerned the compilation of lists with the present Defendant with the understanding its input was proprietary and compensable and, upon termination, was unable to benefit from the trade secrets developed.

## VII. PLAINTIFFS HAVE SUFFICIENT PLED THEIR ALLEGATION OF DEFAMATION PER SE, AND IT IS NOT BARRED BY THE DOCTRINE OF ABSOLUTE PRIVILEGE

Like their arguments against Plaintiffs' use of defamation for the improper means element of the tortious interference claim, Defendants argue that Plaintiff's defamation claim is barred by the "Defendants' requirement as a government contractor to report adverse information." (Memo. p. 20). This appeal to privilege, however, is one of absolute, rather than the qualified privilege, discussed *supra*.

Defendants contend that they are subject to government regulations which require them to report adverse information to the Defense Security Service. Specifically, Defendants point to Section 1-302 of the National Industrial Security Program Operations Manual ("NISPOM"), which states that "Contractors shall report adverse information coming to their attention

concerning any of their cleared employees. Reports based on rumor or innuendo should not be made."

By its plain meaning, this statute does not mandate the absolute, unchecked transmission of any negative information about a subcontractor on a government contract. Rather the regulation specifically states that any reports to the government "should not be made . . . based on rumor or innuendo." While, Defendants are correct that Plaintiffs have not "offered . . . evidence that the information Defendants provided was comprised of "rumor and innuendo," Plaintiffs have gone much further by specifically claiming that Defendants made the report "with knowledge of [its] falsity and with actual malice." (Compl. ¶¶ 151,166). The information was false and was generated by Defendants specifically for the purpose of defaming the plaintiff.

Defendants cite *Becker v. Philco*, 372 F.2d 771 (4th Cir. 1967) for the proposition that "a government contractor is immune for defamation of an employee because of reports made to the Government under the requirements of NISPOM." In *Becker*, however, there was no contention that the employer had not abided by the requirements of NISPOM. Rather, according to the facts of that case, the employer received a report from a third-party that the employees in question had breached their security obligation. *Id.* at 772. The employer then investigated the allegation and reported the results of that investigation to the Government. *Id.*

In their complaint, Plaintiffs allege, not that Defendants received and then reported information which came to the Defendants, but that Jerry Torres purposefully fabricated allegations against the Plaintiffs and then directed a TAES employee to draft the incident report based upon the allegations he knew to be false. (Compl. ¶¶ 151, 166). *Becker* and other such cases clearly contemplate an extension of absolute privilege to government contractors when they are fulfilling their obligation to the government as defined by contract or regulation. Jerry

17

Torres' action in originating false information and then causing a report based upon that false information to be filed with the Defense Security Service places him outside the protection of *Becker*. His action was not required by the government, and because he knew the information to be false, the specific mandate of the NISPOM regulation that reports not be based on mere rumor or innuendo applies to bar the Defendants assertion of privilege.

### VIII. BECAUSE PLAINTIFFS' STATE COURT ACTION WAS NONSUITED, THIS COURT HAS DIVERSITY JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Finally, Defendants claim that should this court dismiss Plaintiffs' federal claims, it must also dismiss their state law contract claims because Plaintiffs have waived diversity jurisdiction. By statute, Federal District Courts "have original jurisdiction of all civil actions arising under [federal law]." 28 U.S.C. § 1331. As Defendants suggest, this court exercises supplemental jurisdiction over Plaintiffs state law claims because they "are so related to the [federal] claims . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the fact that Plaintiffs seek greater than $75,000, and the parties are "citizens of different States," provides an independent basis for original jurisdiction. 28 U.S.C. § 1332(a). Defendants argue that Plaintiffs have waived diversity jurisdiction under § 1332(a) by not either filing their first lawsuit in federal court or failing to removing that action to federal court in accordance with the provisions of 28 U.S.C. § 1446. Under § 1446(b), a defendant must file a notice of removal within 30 days of receipt of the "initial pleading," and "a case may not be removed on the basis of [diversity] jurisdiction more than 1 year after commencement of the action."

Defendants *Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 600 (8th Cir. 2002) in support of their argument. In *Lindsey*, the United States Court of Appeals for the Eighth Circuit held that a defendant who failed to remove to federal court on the basis of diversity jurisdiction within the

time period prescribed under § 1446(b), but removed the case only when the plaintiff added a claim under federal law, could not remain in federal court for the state law claims on the basis of diversity jurisdiction after plaintiff voluntarily dismissed her federal law claim. *Id.* Because the defendant did not act to remove the case to federal court within the one year deadline, federal question jurisdiction provided the only basis for federal jurisdiction. Thus, Plaintiff's voluntary dismissal of the federal claims allowed the federal court to remand the state law claims over which it had exercised only supplemental jurisdiction. *Lindsey*, Defendants claim, requires this court to dismiss Plaintiffs' state law claims because Plaintiffs have filed and nonsuited an earlier action in Virginia state court.

Defendants in this case essentially argue that this court should look to the date of the Plaintiffs' state court complaint for purposes of calculating time under § 1446. However, this District has already determined that in a similar procedural posture, a refiling after a nonsuit constitutes a new action under the Virginia Nonsuit statute, and for purposes of applying § 1446, the date of filing the second complaint is the date of the initial pleading.

> By nonsuiting the action and filing a second proceeding, plaintiff has essentially started anew. . . . [T]he thirty-day and one-year limits of § 1446(b) do not begin to run at commencement of the nonsuited action, but instead begin on the date the subsequent action is filed.

*Price v. Food Lion, Inc.*, 768 F.Supp. 181, 183 (E.D. Va. 1991). *See also Ginn v. Stegall*, 132 F.R.D. 166, 168 (E.D. Va. 1990) (holding same); *Hingst v. Providian National Bank*, 124 F. Supp. 2d 449, 452 (S.D. Tex. 2000) ("It makes no difference that Plaintiff's claims are the same, and that Defendant failed to remove the previously dismissed state court suit. A defendant's conduct in a prior lawsuit has no bearing on the removability of a later suit."). Thus, by filing this lawsuit in federal court, Plaintiffs have invoked the court's diversity jurisdiction under § 1332(a), and jurisdiction remains in this court, with or without the federal law claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' Motion to Dismiss their Complaint under Rule 12(b)(6).

                                          Respectfully submitted,
                                          ***RICHARD J. FORD***
                                          ***FEDSYS, INC.***
                                          By counsel

_____/s/_____

James K. Lay
Virginia bar no 44923
303 N. Washington St.
Alexandria, VA 22314
Phone: 703-299-1040
Fax:    703-299-1039
jim@laymoore.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kevin B. Bedell, Esq.
Virginia Bar No. 30314
*Counsel for Defendants Jerry W. Torres &*
*Torres Advanced Enterprise Solutions, LLC*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1200
Mclean, VA 22102
bedellk@gtlaw.com

                                      _____/s/_____
                                        James K. Lay
                                        Virginia bar no 44923
                                        *Attorney for Plaintiffs Rick Ford &*
                                        *FedSys, Inc.*
                                        303 N. Washington St.
                                        Alexandria, VA 22314
                                        Phone: 703-299-1040
                                        Fax:    703-299-1039
                                        jim@laymoore.com